FILED
SEP 0 8 2006
At_____
STEPHEN R. LUDWIG, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| KIMBERLY STEELE, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. **2:06CV311 JM** |
| THE POST-TRIBUNE COMPANY, | ) ) | |
| Defendant. | ) | |

### COMPLAINT

Plaintiff KIMBERLY STEELE, (hereinafter "Ms. Steele"), by her attorneys Peter M. Katsaros and Richard Johnson of Hughes Socol Piers Resnick & Dym, Inc., complains of Defendant THE POST-TRIBUNE COMPANY ("the Post-Tribune" or "Defendant") as follows:

### PARTIES, JURISDICTION, AND VENUE

#### Introduction

1. This is a case about a promising and talented reporter and deputy editor who was expressly told by agents and employees of Defendant that she would not be considered for an editor position with the Post-Tribune newspaper because she was not African-American. This case is also about the retaliation that Defendant took against that journalist when she reported Defendant's racial discrimination against her to the Equal Employment Opportunity Commission.

#### The Parties

2. Ms. Steele is a citizen of the State of Indiana because she is a resident of Porter County, Indiana.

3. The Post-Tribune is a newspaper publisher incorporated in the State of Delaware that maintains its principal office in the State of Indiana.

4. Defendant publishes a newspaper in northwest Indiana called the "Post-Tribune" (hereinafter "the Paper"). Defendant employed well in excess of fifteen employees, including Ms. Steele, in the State of Indiana; and all of the acts complained of herein took place in the State of Indiana.

5. At all times material to this complaint, Defendant was an employer as defined within meaning of Title VII ( 42 U.S.C. §2000, et seq.).

6. Ms. Steele brings this action to remedy violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, on the basis of her race, Caucasian, and for retaliatory conduct against her, also in violation of Title VII.

7. At all times material hereto, Ms. Steele was and is a member of a class protected under Title VII, namely Caucasian.

**Jurisdiction and Venue**

8. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §1343 and 28 U.S.C. §1331. Venue in this judicial district is proper in accordance with the provisions of 28 U.S.C. §1391.

9. The U.S. Equal Employment Opportunity Commission issued Ms. Steele a Right to Sue Letter for her retaliation charge on June 14, 2006. A copy of the Right to Sue Letter is attached hereto as Exhibit 1. The instant action has been instituted within ninety days of Ms. Steele's receipt of this letter. Thereafter, the U.S. Equal Employment Opportunity Commission issued Ms. Steele a second Right to Sue Letter on August 9, 2006 for her racial discrimination charge. A copy of the Right to Sue Letter is attached hereto as Exhibit 2. The instant action has been instituted within ninety days of Ms. Steele's receipt of that letter.

## STATEMENT OF CLAIMS

### I. Defendant Discriminates Against Ms. Steele on the Basis of her Race.

10. Ms. Steele is an accomplished, talented journalist who has been the recipient of many awards throughout her career including:

   a. Finalist in the Jesse H. Neal National Business Journalism Awards in July 2003 for the story, "Amalgam Debate;"

   b. Silver Award Winner in the American Society of Business Publication Editors' Midwest Region Competition in June 2003 for the story "Lasting Impressions;" and

   c. Honorable Mention Award for Best Investigative Reporting offered by the Society of Professional Journalists, Indiana Chapter, in April 1996 for the story, "Fake IDs."

11. Ms. Steele was hired by the Paper as a staff reporter on March 22, 2004. On August 31, 2004, Ms. Steele was promoted to the position of deputy Lifestyle editor. While in that position, Ms. Steele won the "Hints from Heloise Fellowship" offered by the American Press Institute in March 2005.

12. In November 2004, the position of editor for the Northlake section of the Paper unexpectedly became available. The Northlake section of the Paper contains news and features relating to Gary, Indiana and other communities in Northwestern Indiana. Ms. Steele was qualified to be the editor for the Northlake section of the Paper. As soon as the Paper began to solicit applicants for the position, Ms. Steele sent an e-mail to the editor in charge of hiring, Paulette Haddix, indicating her interest in the position. Ms. Steele received no response. The Paper sent subsequent e-mail solicitations for the position on December 6, 2004 and December 14, 2006. Thereafter, Ms. Steele sent another e-mail to Ms. Haddix reaffirming her interest in the position.

Again, Ms. Steele received no response.

13. After the Paper sent another e-mail seeking applicants for the position on December 22, 2004, Ms. Steele began to wonder why the Paper had not acknowledged her application for the editor position. Ms. Steele raised the issue with the Paper's business editor, Karen Caffarini. Ms. Caffarini responded that she had been told that Ms. Haddix was specifically looking for an African-American to fill the Northlake editor position because the residents of Gary, Indiana are predominantly African-American.

14. In late December, Ms. Steele raised her concerns about the criteria for the position directly with Ms. Haddix. In response, Ms. Haddix told Ms. Steele that she intended to fill the editor position with an African-American. Ms. Haddix further explained to Ms. Steele that the Paper wanted to fill the editor position with someone who reflected the culture of the community and who related to the residents. Since the residents of Gary are predominantly African-American, Ms. Haddix argued, she wanted the position to go to an African-American. Therefore, the Paper was doing everything possible to find an African-American to take the job. Ms. Haddix further said that she would not interview Ms. Steele because she was waiting for a qualified African-American to apply for the job.

15. The Paper sent another e-mail seeking applicants for the position on January 13, 2005. In early February 2005, the Paper hired an African-American man for the Northlake editor position. Ms. Steele was never asked to interview for the position, nor was another Caucasian candidate who also had applied for it. On information and belief, Ms. Steele, the other Caucasian applicant, and the African-American man who was ultimately hired by the Paper were the only three applicants for the Northlake editor position.

## II. Defendant Retaliates Against Ms. Steele for Filing an EEOC Charge.

16.     In response to the above-described actions of Defendant, Ms. Steele filed a charge of racial discrimination with the EEOC on or about April 19, 2005. Racial discrimination charge 240-2005-4810 attached hereto as Exhibit 3. After Ms. Steele filed her charge and copies were sent to Defendant, Defendant retaliated against Ms. Steele for filing the EEOC charge in the manner specified in paragraphs 17 through 31 *infra*.

17.     After Ms. Steele filed her charge, and copies were sent to Defendant, unjustified and unreasonable scrutiny of Ms. Steele's work by employees and agents of Defendant increased. On May 9, 2005, Ms. Steele was taken aside by her immediate supervisor and manager, Tara Wilson. Ms. Wilson told Ms. Steele that some changes were being made to Ms. Steele's job. While Ms. Steele had been proofreading her own sections since October 2004, and passing along the corrected proofs to the newspaper's designers, Ms. Steele now was to present them only to Ms. Wilson, who would then take the proofs to the designers. All of the other deputy editors at the Paper who worked with copy were allowed to interact with the designers; Ms. Steele was the only deputy editor not allowed to do so. Ms. Steele was also to forward certain draft items that she previously had sent straight to the designer to Ms. Wilson first so Ms. Wilson could write comments on them.

18.     Ms. Wilson subsequently assigned Ms. Steele more work, specifically pulling certain features from the wire and the Internet. This was previously Ms. Wilson's job, but she told Ms. Steele that she no longer had time to do this task anymore since she now was checking all of Ms. Steele's work.

19.     Ms. Wilson also told Ms. Steele on May 9, 2005 that she was switching desks with Ms. Steele. Ms. Wilson complained that she was too cold where she had been sitting before, and she

wanted Ms. Steele's desk. Ms. Steele was offered no input into this decision.

20. In the following months, Ms. Wilson would subject Ms. Steele to other acts of retaliation, which included, but were not limited to, the following:

- a. Criticizing Ms. Steele and her work without justification, in a loud, melodramatic way, in front of other employees. The purpose of this criticism was to embarrass Ms. Steele in front of the other employees of the Paper, make her appear incompetent at her job, and to force her to resign;

- b. Giving Ms. Steele tasks that were unduly onerous, and/or impossible to complete properly within the time frame provided;

- c. Giving Ms. Steele tasks without giving her the training, direction, or instruction needed to complete them properly, thus intentionally setting Ms. Steele up to fail;

- d. Berating Ms. Steele for minor mistakes;

- e. Refusing to acknowledge Ms. Steele's significant accomplishments at her job;

- f. Taking responsibility away from Ms. Steele for running certain columns that Ms. Steele had indicated to others at the Paper that she really enjoyed doing; and

- g. Interfering with the production of stories authored by Ms. Steele for the Paper.

21. When Ms. Steele asked her superiors to address Ms. Wilson's unfair treatment, they consistently would either take Ms. Wilson's side or retort that Ms. Steele needed to try to get along with Ms. Wilson.

22. On or about May 17, 2005, the Paper advertised an opening for the position of Porter County editor. Ms. Steele was qualified for the position of Porter County editor. Ms. Steele immediately e-mailed Ms. Haddix to indicate her interest in applying for the position. The next day, the other editors were told that there was a hold on the position because of financial worries. Ms.

Steele, however, was not told of this turn of events by any of the decision makers, and only heard about it informally from her colleagues.

23. The Porter County editor position was solicited again in June 10, 2005, Ms. Steele again indicated to Ms. Haddix that she was interested in the position. Ms. Haddix responded that she was in no hurry to fill the position, and probably would not interview anyone for the position until late June. When Ms. Steele finally interviewed for the position on or about June 29, 2005, she was warned that this would be a different kind of interview format than the Paper had used in the past in that it would be "structured and progressive." That is to say, Ms. Steele would interview with three separate interviewers, each asking a different set of questions. Ms. Steele was also obligated to take a detailed test on grammar, syntax, and editing, which no other editors were required to take before or since for other comparable positions.

24. The only other applicant for the Porter County editor position was Carole Carlson. On July 1, 2005, the paper chose Ms. Carlson for the position instead of Ms. Steele, though Ms. Carlson had little management experience compared to Ms. Steele. Ms. Steele also had previously covered Porter County as a reporter while Ms. Carlson had not. On information and belief, Ms. Carlson had not initially sought the Porter County editor position, but had been cajoled by managers and agents of Defendant into applying for and accepting the position after they learned that Ms. Steele was the only applicant for the position.

25. In response to the above described actions of Defendant, Ms. Steele filed a charge against the Post-Tribune on or about August 22, 2005 that described the retaliation that she had suffered. Retaliation charge 240-2005-7607 attached hereto as Exhibit 4.

26. On April 27 2006, the EEOC issued a determination that there was reasonable cause

7

to believe that the Post-Tribune discriminated against Ms. Steele based on her race in denying her the Northlake editor position. EEOC Determination letter dated April 27, 2006 attached hereto as Exhibit 5.

## COUNT I
### (Race Discrimination)

27. Plaintiff Kimberly Steele reasserts and realleges paragraphs 1-26, *supra*, of her Complaint against Defendant the Post-Tribune Company as though fully set forth here.

28. The discrimination against Ms. Steele in the interviewing and hiring for the Paper's Northlake editor position was done intentionally in violation of Title VII of the Civil Rights Act of 1964, as amended, on the basis of her race, Caucasian. Specifically, Ms. Steele was told by agents and representatives of Defendant that she would not be interviewed or hired for the Northlake editor position because she was not an African-American. Ms. Steele was otherwise qualified for the position of Northlake editor.

29. As a direct and proximate result of Defendant's actions in discriminating against Ms. Steele for the Northlake editor position, Ms. Steele has suffered and will continue to suffer damages in the form of decreased earnings, including but not limited to, wages, benefits, other compensation, and the loss of further advancement opportunities. Ms. Steele also has suffered other pecuniary losses, emotional pain, suffering and inconvenience, mental anguish, loss of the enjoyment of life, and other non-pecuniary losses.

30. As a further direct and proximate result of Defendant's violation of Title VII, as described above, Ms. Steele has been compelled to retain the services of counsel in an effort to enforce her rights, and has thereby incurred and will continue to incur legal fees and costs, the full

nature and extent of which are not yet known. Therefore, Ms. Steele requests that attorney's fees and costs be awarded to her pursuant to Title VII.

WHEREFORE, Plaintiff Kimberly Steele prays for, following a jury trial:

1. Judgment in her favor and against Defendant the Post-Tribune Company in an amount sufficient to compensate her for her losses and damages, including but not limited to past and future income and benefits, compensatory and punitive damages;

2. Attorney's fees and costs pursuant to 42 U.S.C. §2000e-5(k); and

3. Any and other further relief as this Court deems just.

## COUNT II
### (Retaliation §2000-e-3(a))

31. Plaintiff Kimberly Steele reasserts and realleges paragraphs 1-30, *supra*, of her Complaint against Defendant the Post-Tribune Company as though fully set forth here.

32. Ms. Steele engaged in statutorily protected expression, specifically filing a complaint with the EEOC against Defendant concerning the racial discrimination that she suffered.

33. Thereafter, Ms. Steele suffered adverse employment actions taken by Defendant. These adverse employment actions are described in detail in paragraphs 17 through 24 *supra*.

34. There was a causal link between the protected expression and the adverse action taken by Defendant. Specifically, Defendant took the adverse actions against Ms. Steele in retaliation for Ms. Steele filing a charge of discrimination with the EEOC against the Post-Tribune. Defendant took this retaliation against Ms. Steele intentionally and in violation of Title VII of the Civil Rights Act of 1964, as amended.

35. As direct and proximate result of Defendant's actions in retaliating against Ms. Steele for filing a race discrimination charge against the Post-Tribune with the EEOC, Ms. Steele

has suffered and will continue to suffer damages in the form of decreased earnings, including but not limited to, wages, benefits, other compensation, and the loss of further advancement opportunities. Ms. Steele also has suffered other pecuniary losses, emotional pain, suffering and inconvenience, mental anguish, loss of the enjoyment of life, and other non-pecuniary losses.

36.     As a further direct and proximate result of Defendant's violation of Title VII, as described above, Ms. Steele has been compelled to retain the services of counsel in an effort to enforce her rights and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are not yet known. Therefore, Ms. Steele requests that attorney's fees and costs be awarded to her pursuant to Title VII.

WHEREFORE, Plaintiff Kimberly Steele prays for, following a jury trial:

1. Judgment in her favor and against Defendant Post-Tribune Company in an amount sufficient to compensate her for her losses and damages, including but not limited to past and future income and benefits, compensatory and punitive damages;

2. Attorney's fees and costs pursuant to 42 U.S.C. §2000e-5(k); and

3. Any and other further relief as this Court deems just.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL COUNTS IN THIS COMPLAINT.

Respectfully submitted,

*/s/ Peter M. Katsaros*

Peter M. Katsaros - One of the Attorneys for
Plaintiff Kimberly Steele

*/s/ Richard Johnson*

Richard Johnson - One of the Attorneys for Plaintiff
Kimberly Steele

Date: September 7, 2006

Peter M. Katsaros
Richard Johnson
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
Three First National Plaza
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100
FAX No. (312) 580-1994
PKatsaros@hsplegal.com
RJohnson@hsplegal.com

@PFDesktop\::ODMA/WORLDOX/S:/WD/LIT/9107/14934/00093720.WPD