# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| KIMBERLY STEELE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06-CV-311 JVB |
| | ) | |
| THE POST-TRIBUNE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, Kimberly Steele, sued her employer, Defendant Post-Tribune Company, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. She alleged that Defendant passed over her for a promotion because of her race—Caucasian—hiring a less qualified black man, Lovell Beaulieu, instead; and then retaliated against her because she filed a charge with the EEOC. The case was tried before a jury, which found for the Defendant on both claims. The Plaintiff then filed a motion for a new trial (DE 144), arguing that the verdict is against the clear weight of the evidence.

**A. Standard for Granting a New Trial**

Federal Rule of Civil Procedure 59(a) allows a court to grant a new trial "in any action in which there has been a trial by jury, for any reason for which a new trial has heretofore been granted in an action at law in federal court." The decision whether to grant a motion for a new trial is committed to the sound discretion of the trial court, *Van Bumble v. Wal-Mar Stores, Inc.*,

407 F.3d 823, 827 (7th Cir. 2005). A district court should grant a motion for a new trial because the verdict was against the weight of the evidence "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the court's] conscience. *Latino v. Kaizer,* 58 F.3d 310, 315 (7th Cir. 1995).

**B. Trial Evidence**

During the course of the seven-day trial, Plaintiff submitted evidence to support her theory of the case: that she was not hired or even considered for the position of North Lake ("Gary") editor at the Post-Tribune, which was open in late 2004 and early 2005, though she was the best qualified applicant for that position, because she is Caucasian and Defendant intended to hire an African-American. The jury heard conflicting evidence on whether Paulette Haddix told Plaintiff she intended to hire an African-American for the position, and whether Haddix told others she intended to fill the position with an African-American. Although she had only a few months earlier been the top choice of several of Defendant's senior editors, including Haddix, to become the Lifestyle editor, a job for which Tara Wilson was selected, Plaintiff was not formally interviewed for the Gary editorship. Plaintiff became the deputy Lifestyle editor, the position she held when, a few months later, the Gary position became vacant.

Defendant hired Lovell Beaulieu, an African-American, to be the Gary editor. Defendant's explanation for not interviewing Plaintiff for the Gary editorship was that the decision maker, Haddix, was already familiar with her qualifications. The jury heard Beaulieu's qualifications as well as Plaintiff's: Beaulieu had worked for The Des Moines Register and the

2

Columbus Dispatch. He was the managing editor of the Lafayette Daily Advertiser, where he oversaw a newsroom with eleven reporters and more than forty employees in all. He had bachelor's degree in English with some work toward a master's degree. Plaintiff had worked for the Times of Muster and the Post-Tribune. She was the managing editor of a weekly paper where she supervised two or three people. She was the night news editor at the Michigan City News Dispatch and the Kane County Chronicle. She completed about three years of college, but did not earn a degree.

When Plaintiff was passed over for the Gary position she filed an EEOC racial discrimination charge against the Defendant. According to Plaintiff, very soon after the charge was filed, her boss, Tara Wilson, moved her desk in the newsroom to what Plaintiff considered was a less desirable location. She was required to submit her work to Wilson to proofread, instead of giving it to the page designers directly. According to Plaintiff, Wilson asked her to write more, did not train her on parts of the deputy Lifestyle editor's job, and gave her a performance review which was unfairly critical of her. Plaintiff unsuccessfully applied for four other editor positions. She was eventually transferred to a split shift. Viewing these actions as punishment for filing the EEOC charge, Plaintiff filed additional charges of retaliation.

Defendant introduced evidence that Wilson did not know that Plaintiff had filed an EEOC charge when she made the changes to the Plaintiff's work situation. Witnesses testified that Plaintiff's desk was moved because she had often complained of the temperature at the old location, near a window. Wilson decided to review the pages Plaintiff proofed before they went to the page designers to add an extra set of eyes. While Plaintiff believed that as a deputy Lifestyle Editor she could not be forced to write articles, Haddix informed her that her job was to

do what her editor, Wilson, asked her to do. Defendant presented testimony as to why a different candidate was chosen for each of the other editorships Plaintiff sought. Haddix and others testified that Plaintiff was transferred to the split shift to minimize the impact of her frequent absences—she had taken 17.5 sick and personal days in the first five months of 2007.

As the foregoing review demonstrates, although Plaintiff produced evidence at trial that would have allowed a jury to find that she was not hired as the Gary editor on account of her race, there was also evidence from which a jury could reasonably conclude that Defendant chose a different person because they preferred his qualifications and experience over hers. Furthermore, a reasonable jury could have believed the explanations Defendant offered for the various actions Plaintiff insisted were done in retaliation for her having filed an EEOC charge. The evidence was not so one-sided as to convince the Court that the verdict for the Defendant was against the manifest weight of the evidence.

**C. Conclusion**

Plaintiff's motion for a new trial (DE 144) is DENIED.

SO ORDERED on March 27, 2009.

               s/ Joseph S. Van Bokkelen
               Joseph S. Van Bokkelen
               United States District Judge